# United States Court of Appeals

## For the Eighth Circuit

_____

No. 13-3406

_____

Robert V. Paulson, II

*Petitioner - Appellant*

v.

Newton Correctional Facility, Warden

*Respondent - Appellee*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: September 8, 2014
Filed: December 4, 2014

_____

Before BENTON, BEAM, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

This case returns to the court after remand to the district court to consider whether the Iowa Court of Appeals' decision in Paulson v. State, 759 N.W.2d 2, No. 07-1108, 2008 WL 4525476 (Iowa Ct. App. Oct. 1, 2008) (table) (unpublished) was "contrary to" clearly established federal law. See Paulson v. Newton Corr. Facility,

703 F.3d 416 (8th Cir. 2013). On remand, the district court[1] determined that the Iowa Court of Appeals' decision was contrary to federal law, and thus the district court conducted a de novo review of Paulson's claim of ineffective assistance of counsel, determining Paulson did not suffer prejudice under <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). Paulson again appeals the district court's denial of his habeas corpus petition filed pursuant to 28 U.S.C. § 2254. We now affirm.

I.

An Iowa jury convicted Robert Paulson of second-degree sexual assault for sexually abusing his five-year-old daughter, M.P. The following evidence was presented at trial. M.P. testified that Paulson touched her in the "wrong spot" and told her to keep it a secret. When asked to identify on a diagram where her father touched her, she identified her chest, but not vaginal area. M.P. further testified that her father did not shower with her when she stayed at his house.

Officer Suzanne Laurence testified that M.P. told her that her father touched her vaginal area. M.P.'s therapeutic counselor, Lori Salsbury, testified that M.P. told her that Paulson crept into her room while she was sleeping and touched her chest and vaginal area. Salsbury also testified that, according to M.P., Paulson had a desire to touch her because he did not have a wife. Officer David McDermott testified that Paulson admitted that he became sexually aroused, thinking of his ex-wife, while showering with M.P.

The jury also heard from Shelly Piner, Paulson's former wife and M.P.'s mother. During Paulson's trial, Piner testified as follows:

---

[1]The Honorable James E. Gritzner, Chief Judge, United States District Court for the Southern District of Iowa.

Well, I would tell Bob no because I was not interested or I wasn't feeling good. Bob didn't care. He would always force himself on top of me. And if he didn't—if intercourse wasn't that night, then it had to be in the morning or just whenever. And there would be times where I was in the shower and he would get in the shower and masturbate.

Additionally, Dana Wiley, Paulson's former girlfriend, testified it "was not unusual" for her to talk about sex with Paulson over the phone. According to Wiley, during one telephone conversation, one of Paulson's daughters was asleep next to him in his bed as Paulson was masturbating and encouraging Wiley to do the same while talking about sex. Although Wiley asked Paulson to stop, she testified that he continued, thinking that she was teasing him, until she hung up.

Heidi Buttars, who frequently cared for Paulson's two daughters, testified that she observed the girls engage in sexual behavior she considered unusual for children their age,[2] that the girls told her that they showered with their father daily, and that the girls told her that they gave their father "Road Runner" kisses, where they would touch their tongues together. Buttars also testified about one incident where she observed Paulson rubbing M.P.'s neck and shoulders, and then moving to her chest and pelvic area. Once Buttars and Paulson made eye contact, he stopped. When Buttars later told M.P. that sort of touching was inappropriate, she told her that her father does it all the time and says it is fine. Buttars also testified that Paulson's other daughter, C.P., asked Buttars if she thought that "Jesus could get my daddy to stop hurting my bottom."

Paulson's defense attempted to rebut the veracity of the government's witnesses, arguing that there was no direct, credible evidence that Paulson abused

---

[2]Specifically, Buttars testified that M.P. simulated sexual acts by rubbing male and female Barbie dolls together, rubbing her vaginal area, and touching her younger sister's vaginal area.

M.P. Specifically, Dr. Ana Lopez-Dawson, a clinical psychologist, testified that the method of questioning Salsbury employed when questioning M.P. was coercive. Additionally, M.P.'s pediatrician and members of the community, including M.P.'s teacher, testified that they observed no physical or emotional signs of sexual abuse. The jury rejected Paulson's defense, finding him guilty of second-degree sexual abuse.

Paulson filed a direct appeal of his conviction and sentence, and the Iowa Court of Appeals affirmed his conviction. See State v. Paulson, 662 N.W.2d 370, No. 01-0379, 2003 WL 118209, at *5 (Iowa Ct. App. Jan. 15, 2003) (table) (unpublished). Subsequently, Paulson filed an application for postconviction relief, arguing 18 grounds of ineffective assistance of counsel by his trial and appellate counsel. The Iowa district court dismissed Paulson's postconviction application, but the Iowa Court of Appeals remanded the case for an evidentiary hearing, concluding there were "genuine issues of material fact underlying Paulson's various ineffective assistance of counsel claims." Paulson v. State, 705 N.W.2d 340, No. 04-1321, 2005 WL 1963625, at *3 (Iowa Ct. App. Aug. 17, 2005) (table) (unpublished).

On remand, the Iowa district court found that the attorneys' performance was "not deficient and did not result in prejudice." Paulson, 2008 WL 4525476, at *1. The Iowa district court explicitly addressed whether trial counsel was ineffective for not objecting to the testimony of Paulson's ex-wife that could imply he was sexually violent. Id. at *4. Rejecting Paulson's ineffective assistance of counsel claim, the Iowa Court of Appeals held that, even if failing to object constituted deficient assistance, "Paulson cannot prove by the preponderance of the evidence that counsel's objection . . . would have resulted in a different outcome at trial." Id. at *4 (quoting Iowa district court). The Iowa Court of Appeals agreed with the Iowa district court, holding that "[a]lthough we share the postconviction court's concern about the evidence of appellant's forcing himself on his wife, we must agree with the court's conclusion appellant cannot demonstrate that exclusion of the challenged

-4-

evidence would have resulted in a different outcome at trial." Id. Paulson's application for further review was denied.

In 2009, Paulson filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. The district court denied relief, and this Court granted a certificate of appealability on Paulson's claim that his trial counsel was ineffective for failing to challenge Piner's testimony about his sexual behavior during their marriage. We initially remanded the case to the district court for consideration of Paulson's argument that the Iowa Court of Appeals' decision "was 'contrary to' clearly established federal law because it applied a preponderance of the evidence standard rather than a reasonable probability standard in concluding that his ex-wife's testimony was not prejudicial." Paulson, 703 F.3d at 419-21. Following our directions, the district court determined that the Iowa Court of Appeals' decision was indeed contrary to clearly established federal law. The district court then proceeded to consider de novo whether Paulson's trial counsel was constitutionally ineffective for failing to object to Piner's statement. See Johnson v. Williams, 133 S. Ct. 1088, 1097 (2013) ("Even while leaving 'primary responsibility' for adjudicating federal claims to the States, AEDPA permits de novo review in those rare cases when a state court decides a federal claim in a way that is 'contrary to' clearly established Supreme Court precedent." (citations omitted)). In conducting this review, the district court determined, in light of the significant evidence against him, Paulson had failed to show prejudice under Strickland because there was no reasonable probability that the result of the trial would have been different had Piner's statement been excluded. See Strickland, 466 U.S. at 694.

## II.

Paulson once again appeals the denial of his section 2254 petition, challenging the district court's conclusion that he did not suffer prejudice.[3] "When considering the district court's denial of a habeas petition, 'we review the district court's findings of fact for clear error and its conclusions of law de novo.'" Middleton v. Roper, 455 F.3d 838, 845 (8th Cir. 2006) (quoting Lyons v. Luebbers, 403 F.3d 585, 592 (8th Cir. 2005)). We agree with the district court's determination that Paulson has not shown prejudice under Strickland and, thus, has failed to establish ineffective assistance of trial counsel.

To prevail under Strickland, a defendant must first show that his attorney's performance was deficient. Strickland, 466 U.S. at 687. Considering an attorney's performance, we "must indulge a strong presumption" that the conduct was reasonable, and "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. at 689 (internal quotation marks omitted). In addition to showing that the counsel was deficient, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "Merely showing a conceivable effect is not enough; a reasonable probability is one sufficient to undermine confidence in the outcome." Worthington v. Roper, 631 F.3d 487, 498 (8th Cir. 2011) (internal quotation marks omitted).

---

[3]The government, without filing a cross appeal, argues the district court erred in concluding the Iowa Court of Appeals' decision was "contrary to" clearly established federal law. Because we agree with the district court's determination that Paulson has failed to show prejudice, it is unnecessary to consider the government's argument on this point.

Paulson's attorney did not object to Piner's testimony that Paulson forced her to have sex and masturbated in front of her while she showered. Both parties seem to agree that the failure to object was an error and not valid trial strategy, and the Iowa Court of Appeals acknowledged that the testimony from Piner regarding her sexual experiences with Paulson should not have been admitted. Because of these acknowledgments of deficient conduct, we proceed to consideration of the prejudice prong of the Strickland analysis, as did the district court.

Paulson contends that Piner's statements regarding Paulson's sexual preferences were so prejudicial that they alone destroyed his right to a fair trial. Paulson essentially re-argues his defense at trial: M.P.'s testimony and statements were coerced and unsupported by his witnesses; further Piner, his ex-wife, vindictively sought his prosecution because of a bitter divorce. The jury, however, rejected Paulson's defense, and our job is not to re-litigate his case. Instead, we must determine whether there is a reasonable probability that the jury would have reached a different outcome had Piner's testimony been excluded.

Based on the direct and circumstantial evidence presented against Paulson, we cannot conclude that Piner's testimony undermines confidence in the outcome at trial. Other testimony at trial supported the government's characterization that Paulson was prone to untoward sexual behavior. For instance, Wiley, Paulson's former girlfriend, testified that Paulson wanted her to have phone sex with him while he was masturbating and his daughter was sleeping in his bed next to him. Additionally, the jury heard from Officer McDermott that Paulson admitted to becoming sexually aroused while showering with his daughter. Although the Iowa Court of Appeals characterized Piner's testimony as depicting Paulson as a "sexually violent person," the testimony is not so prejudicial that it undermines confidence in the outcome of the trial, especially in light of the other evidence of Paulson's sexually perverse behavior.

The jury also heard directly from M.P. that Paulson touched her in the "wrong spot." Buttars testified that Paulson rubbed M.P. on her chest and pelvic area, that M.P. told her Paulson did this regularly, and that C.P. asked Buttars if "Jesus could get my daddy to stop hurting my bottom." The jury also heard other evidence against Paulson indicating that he instructed M.P. to keep his sexual abuse a secret, that M.P. told her counselor and a police officer that Paulson touched her vaginal area, that Paulson told his daughters to fear police, and that M.P. and C.P. demonstrated aggressive sexual behavior atypical of children their age.

Although Piner's testimony may have had a "conceivable effect" on the outcome of the trial, Paulson cannot show that the testimony undermines confidence in the outcome. See Worthington, 631 F.3d at 498. Therefore, we agree with the district court's conclusion that Paulson cannot show he was prejudiced under Strickland as there is no reasonable probability that, had Piner's testimony been excluded, the result of the trial would have been different.

III.

Accordingly, we affirm the district court's denial of Paulson's 28 U.S.C. § 2254 petition.

_____