ROBERT W. PRATT, U.S. DISTRICT JUDGE
Petitioner Rosendo Enriquez, now represented by counsel, was an inmate of the Iowa Department of Corrections serving a sentence on convictions for drug and firearm offenses in Muscatine County, Iowa. State v. Enriquez , No. 09-1460, 2011 WL 1584114, at *1 (Iowa Ct. App. Apr. 27, 2011). He is now on parole,[1] and his tentative discharge date is December 3, 2033. Iowa Dep't of Corr., Offender Information , https://doc.iowa.gov/offender/view/1105354 (last visited Apr. 10, 2018).
Enriquez seeks relief pursuant to 28 U.S.C. § 2254 for a violation of his federal Sixth Amendment right, arguing his trial and appellate counsel performed below prevailing professional norms by failing to argue the Iowa Constitution invalidated a search by officers at his home.[2] Enriquez further argues that if counsel had challenged the search based on the Iowa Constitution instead of the federal Fourth Amendment, the evidence would have been suppressed, therefore he was prejudiced by counsel's performance. Pet'r's Br., ECF No. 34.
The Court stayed this case for over two years while Enriquez exhausted his state remedies, which are now complete. The matter is ready for ruling. For the following reasons, the Court will deny the petition, dismiss the case, and grant a Certificate of Appealability.
I. BACKGROUND
The chronology of events is important to the question of counsel's performance, so the Court sets them out in detail. Enriquez's cohabitant, Stephanie Ryder, was on probation in June 2008. Enriquez , 2011 WL 1584114, at *1. As part of her probation, she agreed to "submit my person, property, place of residence, vehicle, [and] personal effects to search at any time, with or without a search warrant, warrant of arrest or reasonable cause by any probation/parole officer or law enforcement officer." Id. ; ECF No. 31-7 at 54-56.[3] Ryder's probation officer learned of possible drug trafficking and firearms in Ryder's home. Enriquez , 2011 WL 1584114, at *1.
On June 30, 2008, Ryder's probation officer and other law enforcement officers went to Ryder's home to do a "home check" under the terms of her probation agreement.[4] Id. Ryder allowed the officers *997 into the house.[5] Enriquez was in the shower, and when Ryder informed him the officers were present, Enriquez stepped out of the bathroom wearing a towel. He asked to get dressed in the bedroom, and one of the law enforcement officers agreed but said he wanted to accompany Enriquez for safety reasons, and Enriquez refused. Nevertheless, the officer stood outside the bedroom and watched through a two-and-a-half-inch crack in the accordion-style door to the bedroom. The officer "observed Enriquez go to the closet, reach 'mid-level' or 'up above' with both of his hands and 'fumble[ ] with' or 'mess[ ] with' something." Id. Enriquez did not remove anything from the closet. Later, the officer searched the closet where he saw Enriquez moving, and the officer "discovered a large plastic bag tucked in clothing." Inside were illegal drugs. On the dresser was a silencer. Id. The officers stopped the search, got a warrant, and after searching pursuant to the warrant, found a handgun in the same closet, plus ammunition in another "cabinet near the kitchen or in the hall closet." Id.
A. Criminal Trial and Application for Discretionary Review
Enriquez and Ryder were charged with drug and firearm crimes. ECF No. 31-5 at 6-7. On September 24, 2008, Enriquez filed a motion to suppress, arguing he did not consent to the warrantless search of his home. He relied on the Fourth Amendment to the United States Constitution, but he did not rely on article I, section 8 of the Iowa Constitution. ECF No. 31-5 at 11-14. At first, the trial court granted the motion to suppress because Enriquez did not consent. ECF No. 31-5 at 39-42. On November 7, 2008, the trial court reconsidered and denied the motion to suppress because Ryder's probation agreement justified the search, no private area of Enriquez's was searched, Enriquez did not expressly object, and the drugs were in plain view during the search. ECF No. 31-5 at 46-48; Enriquez , 2011 WL 1584114 at *2. Enriquez asked the trial court to reconsider based on a recently decided case, State v. Brandon , 755 N.W.2d 548, 552 (Iowa Ct. App. 2008), arguing that the officers did not have Enriquez's consent to search. ECF No. 31-5 at 49-53. The decision in Brandon was not based on the Iowa Constitution, but rather was based on an interpretation of a cohabitant's rights under the Fourth Amendment in Georgia v. Randolph , 547 U.S. 103, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006). See Brandon , 755 N.W.2d at 551-52. The trial court denied the motion to reconsider. ECF No. 31-5 at 55.
Enriquez sought a stay of the criminal case and discretionary review of the order denying his motion to suppress. ECF No. 31-5 at 56-61. The application for stay and review did not specifically assert a challenge under the Iowa Constitution. Id. at 56-60. In resisting the application, the State pointed out, "The district court noted *998 that the residential search was valid under Ryder's probation agreement and Enriquez did not expressly object to the search so as to invoke a situation similar to that examined in Georgia v. Randolph (finding defendant can override cohabitant's consent to search)." ECF No. 31-6 at 88 (citation omitted). The Iowa Supreme Court denied the application for discretionary review on February 19, 2009. ECF No. 31-6 at 90.
At the time the motion to suppress issue was being litigated in Enriquez's case, his main argument was he did not consent to the search, and trial counsel was aware of cases on appeal that resulted in the December 17, 2010 decision in State v. Ochoa , 792 N.W.2d 260 (Iowa 2010). See ECF No. 31-14 at 24. In Ochoa , the defendant, a parolee, argued that, under the Iowa Constitution, the officers could not conduct a warrantless, suspicionless search of his hotel room based simply on his parole agreement that authorized law enforcement officers to search the parolee's residence "at any time and for any reason." Ochoa , 792 N.W.2d at 262. During postconviction proceedings in Enriquez's case, trial counsel testified about pending appeals "more or less on that same issue, probation/parole agreements, and that it was you know a good opportunity to try to see if they would take our case into consideration."[6] Pet'r's Br. 10 (citing PCR Trial Tr. 20). During the postconviction proceedings, trial counsel was asked, "you were aware of cases being prepared to be brought-brought before the Iowa Supreme Court and Court of Appeals which apparently resulted in the Ochoa decision?" ECF No. 31-14 at 24. Trial counsel answered:
A. Yes. That's why we filed an interlocutory appeal after we were-our motion was denied.
Q. In your-in any of your motions before the trial court or before the Supreme Court in your interlocutory appeal, did you raise the issue of the search and seizure being analyzed under the Iowa Constitution as distinct from the Federal Constitution?
A. No, I did not.
Id. at 24-25. Trial counsel withdrew once the direct appeal was filed. Id. at 24-25.
In an April 30, 2009 order allowing the trials of Enriquez and Ryder to be severed and denying Enriquez's request for change of venue, the trial court noted that the search was done based on Ryder's probation supervision and reports of drug sales at the residence. ECF No. 31-6 at 93-96. It further noted that officers entered the residence based on information implicating Enriquez in a murder. ECF No. 31-6 at 93-96.
On July 17, 2009, the Iowa Supreme Court issued State v. Effler , 769 N.W.2d 880 (Iowa 2009). In Effler , the defendant claimed his lawyer provided ineffective assistance by failing to challenge, under the Iowa Constitution, the admission of incriminating statements he made during an interrogation. Id. at 882. The conviction was affirmed by operation of law because the Iowa Supreme Court was equally divided on the issue. Id. at 884. Three of the Iowa Supreme Court Justices believed the relevant portions of the Iowa Constitution did not provide relief to the defendant. Id. at 890. Three others disagreed. Justice Appel, concurring specially, wrote:
separately to emphasize the need for criminal counsel to explore thoroughly the possibility that this court will approach the Iowa Constitution in a different fashion than the United States *999 Supreme Court approaches parallel provisions of the Federal Constitution. Indeed, this case demonstrates why this court should exercise its independent judgment under the Iowa Constitution and not necessarily follow the majority of the United States Supreme Court.
Id. at 894 (Appel, J., concurring) (emphasis added). "When a defendant has a potential claim under both the United States and Iowa Constitutions," Justice Appel wrote, "counsel should ordinarily scour these sources to determine if there is a solid legal basis for asserting an independent interpretation of the Iowa Constitution which would be more beneficial to the accused than is available under the Federal Constitution. Id. at 895.
On July 20, 2009, three days after Effler was issued, Enriquez went to trial. ECF No. 31-7 at 1. The jury found Enriquez guilty, and judgment was entered against him. Id. at 62-64.
B. Direct Appeal
Enriquez appealed on September 4, 2009. ECF No. 31-7 at 65. In his appellate brief, dated nearly a year later, August 20, 2010, Enriquez argued, among other things, that the trial court erred in overruling his motion to suppress evidence. ECF No. 31-8 at 7. He further argued that counsel provided ineffective assistance, but his argument did not rely on the same Iowa Constitution argument that he now raises in his habeas action. Id. at 9, 46-48. Enriquez noted, "See Division III below where defendant claims trial counsel ineffective for failing to argue the suppression issue under the Iowa Constitution in addition to the federal Constitution." ECF No. 31-8 at 33 n.2. But in Division III of the brief, Enriquez argued that trial counsel provided ineffective assistance by failing to (1) obtain a ruling on the plain view issue and (2) argue there is no good faith exception to the exclusionary rule under the Iowa Constitution. Id. at 46-48; Enriquez , 2011 WL 1584114 at *4.
On December 17, 2010, after Enriquez submitted his appellate brief, but before the Iowa Court of Appeals decided his case, the Iowa Supreme Court decided Ochoa. In Ochoa , the Iowa Supreme Court held "a parolee may not be subjected to broad, warrantless searches by a general law enforcement officer without any particularized suspicion or limitations to the scope of the search." 792 N.W.2d at 291. It further held the defendant's "acquiescence to an invalid assertion of lawful authority does not establish consent to the search." Id. at 292.
On April 27, 2011, four months after the Iowa Supreme Court issued Ochoa , the Iowa Court of Appeals affirmed Enriquez's convictions. Enriquez , 2011 WL 1584114, at *1. The Iowa Court of Appeals pointed out that Enriquez did not question whether Ryder consented or whether Ryder's probation officer conducted a valid "home check." Id. at *3 (citing Ochoa , 792 N.W.2d at 281, and explaining that in Griffin v. Wisconsin , 483 U.S. 868, 875-76, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987), the Supreme Court upheld the validity of a warrantless search of a probationer's home where there was reasonable grounds to believe that contraband was present before the search was conducted). It held that when Ryder consented to entry, Enriquez was not present and objecting to the search, as required by United States Supreme Court precedent, id. at *2 (first citing Randolph , 547 U.S. at 109, 126 S.Ct. 1515 ; then citing United States v.Matlock , 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974) ; and then citing Illinois v. Rodriguez , 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990) ), and Enriquez's later refusal to allow an officer into the bedroom "did not vitiate Ryder's initial consent to entry into the home." Id. at *3 (citing *1000 Randolph , 547 U.S. at 114, 126 S.Ct. 1515 (noting no authority for co-tenant consenting to entry into home to prevail over a "present and objecting co-tenant") ). The Iowa Court of Appeals further held the officer was justified in opening the bedroom door and observing Enriquez because of officer safety concerns. Id. (citing Randolph , 547 U.S. at 116 n.6, 126 S.Ct. 1515 (noting that officer safety concerns can override even a present and objecting co-tenant's rights and justify a warrantless search based on exigent circumstances). Enriquez argued his trial counsel provided ineffective assistance for failing to argue that there is not a good faith exception to the exclusionary rule under the Iowa Constitution. Enriquez , 2011 WL 1584114, at *4 (citing State v. Cline , 617 N.W.2d 277, 283 (Iowa 2000) ("[W]e decline to adopt a good faith exception to Iowa's exclusionary rule under the Iowa Constitution."), abrogated on other grounds by State v. Turner , 630 N.W.2d 601 (Iowa 2001) ; see also State v. Coleman , 890 N.W.2d 284, 296 (Iowa 2017) ("As has been thoroughly canvassed in some of our other opinions, the Iowa Supreme Court has a long history of independent adjudication of state constitutional issues. In recent decades, we have reemphasized that independent constitutional tradition. In State v. Cline , we reexamined filaments in our prior law noting the ability of state courts to engage in independent constitutional analysis. In Cline , we specifically declined to follow the approach of the United States Supreme Court in United States v. Leon , 468 U.S. 897, 922, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)." (citations omitted) ) ). The Iowa Court of Appeals rejected the argument because it found the search valid. Enriquez , 2011 WL 1584114, at *4. Important for purposes in this habeas action, the court noted that Enriquez did not argue counsel should have challenged the search based on the Iowa Constitution. Id. at *4 n.4 (citing Ochoa , 792 N.W.2d at 265, 269 ). It explained, "[i]n Ochoa , the supreme court distinguished the state from the federal constitution in the context of searches of a parolee by a general law enforcement officer, specifically stating that it did not address a search by a parole officer." Id.
Enriquez sought further review before the Iowa Supreme Court. ECF No. 31-12. He argued the Iowa Court of Appeals erred in concluding that he objected too late to the search and in concluding that Randolph did not support his position. ECF No. 31-12 at 3. He further argued the Iowa Court of Appeals erred in determining the evidence sufficient to support the conviction. Id. at 4. Although Enriquez's application for further review included a footnote identical to that in his earlier brief referring to a claim regarding ineffective counsel, id. at 33 n.2, the application for further review omitted the ineffective-assistance-of-counsel claim that Enriquez raised in his initial brief. The application for further review also did not mention Ochoa. The Iowa Supreme Court denied Enriquez's request for further review over eight months later, on January 20, 2012. Procedendo issued on February 3, 2012. Resp't's Br. 5.
C. Postconviction Application
After Enriquez filed this § 2254 petition in 2013, he sought and obtained a stay of these proceedings while he pursued postconviction relief. ECF Nos. 1, 11, 14. In state court, Enriquez claimed his trial and appellate counsel should have challenged the search based on the Iowa Constitution. ECF No. 31-14 at 6-11; 19-21. He argued that the Iowa Supreme Court distinguished the Iowa Constitution in Ochoa , which was issued in 2010, and in State v. Baldon , 829 N.W.2d 785, 803 (Iowa 2013), a case decided after Enriquez's direct appeal was over. ECF No. 31-14 at 20. In Baldon , the Iowa Supreme Court held, as a matter of first impression, *1001 that a parolee's broad agreement consenting to suspicionless searches at any time was not reasonable under the search and seizure clause of the Iowa Constitution and did not constitute voluntary consent to search. Baldon , 829 N.W.2d at 789-90, 803. The Iowa Supreme Court emphasized it was addressing only parolees, not probationers like Ryder. Id. at 795 (noting that probation "cases are of limited value in analyzing the consent issue in parole agreements because probationers often end up on probation through plea bargaining and, consequently, maintain a vastly superior bargaining power than parolees"). In Enriquez's case, the search was based on a probationer's agreement. Baldon also did not address the third-party issue present in Enriquez's case. In his postconviction case, Enriquez argued that Ochoa , in particular, "given its detailed review and analysis of the evolution [ ] away from a lockstep analysis of federal and state search-and-seizure constitutional law, should have alerted a reasonably-competent counsel" to the argument that the search violated Enriquez's rights under the Iowa Constitution. ECF No. 31-14 at 20.
After a hearing, the postconviction trial court denied relief on May 22, 2014. ECF No. 31-15 at 5-9. The postconviction trial court distinguished Ochoa and Baldon , explaining that Enriquez:
fails to indicate how he has standing to object to the consent of his roommate, Ryder, to allow the officers to enter the home in the initial contact. In both Ochoa and Baldon , the parolees objected to the search even though they had signed a parole agreement to allow the same. There was no indication that a third party has a right to object to a search based on the invalidity of a parole or probation agreement signed by a third party who allowed entry into the residence. In this case, the appellate court found that Ryder did not object to the entry of the officers into the home.
The Court of Appeals also found that since Enriquez was not nearby when Ryder did not object to the search, and, therefore, was not invited to take part in the threshold colloquy, this invalidates his argument that the search was illegal.
In order to establish ineffective assistance of counsel, a claimant must prove by a preponderance of the evidence:
1. His trial counsel or appellate counsel failed to perform an essential duty, and
2. This failure resulted in prejudice.
Strickland v. Washington , 466 U.S. 668, 687-88 [104 S.Ct. 2052, 80 L.Ed.2d 674] (1984) ; State v. Madsen , 813 N.W.2d 714, 724 (Iowa 2012). Both Ochoa and Baldon were decided by the Iowa Supreme Court after the trial and conviction of Enriquez. Applicant's counsel argues that trial counsel and appellate counsel should have deciphered that this would be a case of first impression and, therefore, preserve the issue by including it in a motion to suppress and also on appeal. The court declines to require trial or appellate counsel to be clairvoyant as to what cases were on appeal, the arguments made, or what the appellate or supreme court would decide once presented.
Id. at 8-9. In fact, criminal trial counsel said she knew the issue was being raised in appellate cases. ECF No. 31-14 at 24-25. Furthermore, the Iowa State Appellate Defender's Office represented both Enriquez and Ochoa, though different Assistant Appellate Defenders worked on the cases. Compare ECF No. 31-8 with Ochoa , 792 N.W.2d at 262.
*1002 D. Postconviction Appeal
Enriquez appealed, raising the same claim. ECF No. 31-16. Between the decision at the postconviction trial level and the decision on the postconviction appeal, the Iowa Supreme Court issued two more decisions interpreting the contours of the protections afforded parolees and probationers under the Iowa State Constitution. In State v. Short , 851 N.W.2d 474, 506 (Iowa 2014), the Iowa Supreme Court extended Baldon to probationers. It held that, based on its 1970 decision involving parolees in State v. Cullison , 173 N.W.2d 533 (Iowa 1970), the Iowa Constitution required general law enforcement officers to get a warrant to search a probationer's home in connection with a new burglary investigation that was unrelated to the probation. Id. at 477, 494, 506. The Iowa Supreme Court acknowledged that its interpretation of the Iowa Constitution did not follow United States Supreme Court precedent. Id. at 506. Short did not address visits by probation officers done in the ordinary course of their supervision. Id. at 505-06. Or whether probationers can voluntarily consent. Id. Or situations involving third parties like with Enriquez. Less than two months before the decision on Enriquez's postconviction appeal, in State v. King , 867 N.W.2d 106, 116, 126-27 (Iowa 2015), the Iowa Supreme Court ruled that a parolee could be subject to a warrantless search by his or her parole officer under a "special-needs exception" related to carrying out the mission of parole. The Iowa Supreme Court did "not address the application of this standard to probationers or how the scope of the search might be affected by the expectations of privacy held by others living in the same home." Id. at 127.
The Iowa Court of Appeals affirmed. Enriquez v. State , No. 14-1004, 2015 WL 4935609, at *2 (Iowa Ct. App. Aug. 19, 2015). The court of appeals began its discussion by stating that Enriquez needed to "prove by a preponderance of the evidence (1) the attorney failed to perform an essential duty and (2) prejudice resulted from the failure." Id. (emphasis added) (citing State v. Rodriguez , 804 N.W.2d 844, 848 (Iowa 2011) ). It held Enriquez failed to establish "that either trial counsel or direct appeal counsel failed to perform an essential duty." Id. at *4. It did not address the prejudice prong.
In denying Enriquez's postconviction appeal, the Iowa Court of Appeals "acknowledge[d] the recent line of cases regarding the validity of consent searches involving parolees and probationers suggests the search of Enriquez's and Ryder's residence could not be premised upon Ryder's probation agreement where law enforcement officers join in the initial entry with the probation officer." Id. at *3. But on the question whether Enriquez received ineffective assistance, the court pointed out that Baldon was issued four years after the motion to suppress was denied, two years after the direct appeal was decided, and it did not address probation agreements such as Ryder's. Id. at *2. The court of appeals recognized that probationers were addressed in Short , but the case still "did 'not address the legality of home visits or other types of supervision by probation officers pursuant to their ordinary functions, nor' did they 'address the question of whether a probationer may validly consent to warrantless home searches.' " Id. at *3 (quoting Short , 851 N.W.2d at 506 ). Even in the then-most recent 2015 case, King , it observed, the Iowa Supreme Court "explicitly did 'not address the application of [the] standard to probationers...." Id. (alteration in original) (quoting King ). The court of appeals continued:
[E]ven if the search could not be premised upon Ryder's probation agreement, Ryder could still voluntarily consent to the probation officer's and law enforcement *1003 officer's entry into the home, the basis upon which his direct appeal was denied. We do not believe a probationer's voluntary consent to law enforcement officers to enter into a residence is somehow vitiated by the existence of the probation agreement, nor has Enriquez provided us any authority to the contrary. Even if the supreme court would ultimately reach such a conclusion, we decline to conclude counsel is ineffective for failing to predict changes in the law which remain unresolved and open to debate. See Snethen v. State , 308 N.W.2d 11, 16 (Iowa 1981) ("Counsel need not be a crystal gazer; it is not necessary to know what the law will become in the future to provide effective assistance of counsel.").
Id. at *3 (emphasis added). The court concluded that Enriquez did not show that counsel "failed to perform an essential duty." Id. at *4. The Iowa Supreme Court denied further review, and procedendo issued.
This Court then lifted the stay of the federal habeas proceedings. The parties submitted briefs in support of and in resistance to the petition. After the parties submitted their briefs, the Iowa Supreme Court in State v. Brooks , 888 N.W.2d 406, 415 (Iowa 2016), extended the special-needs exception to uphold a probation officer's search of a probationer's bedroom after family members reported a drug relapse that would violate the terms of his probation. It contrasted the "impromptu entry" in Brooks , which resulted in probation revocation with the "investigative search" that occurred in Cullison , which resulted not in parole revocation but rather in a new offense. Id. at 416.
II. STANDARD OF REVIEW
For claims properly before a federal court, a writ of habeas corpus shall be granted only if the prior adjudication of the claim:
(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
28 U.S.C. § 2254(d). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone , 535 U.S. 685, 693, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002).
The Supreme Court has held that a state court decision is "contrary to" federal law under § 2254(d)(1)"if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts." Bell , 535 U.S. at 694, 122 S.Ct. 1843. Under the "unreasonable application" standard, this Court may grant a writ only if the state court identified the correct governing federal legal principle but applied that principle to the facts of a petitioner's case in an objectively unreasonable way. See Williams v. Taylor , 529 U.S. 362, 411-13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (O'Connor, J., delivering the opinion of the Court with respect to Part II). "Objectively unreasonable" means something more than an "erroneous" or "incorrect" application of clearly established law, and a reviewing federal court may not substitute its judgment for the state court's even if the federal court, in its own independent judgment, disagrees with the state court's decision. See *1004 Lockyer v. Andrade , 538 U.S. 63, 76, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003). The reviewing court "must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Harrington v. Richter , 562 U.S. 86, 102, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011). The Supreme Court recently reemphasized this deferential standard, saying "[t]he state court decision must be 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.' " Woods v. Etherton , --- U.S. ----, 136 S.Ct. 1149, 1151, 194 L.Ed.2d 333 (2016) (citation omitted). "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster , 563 U.S. 170, 180, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011).
As for the unreasonable determination of facts prong under § 2254(d)(2), the federal court "may not characterize these state-court factual determinations as unreasonable 'merely because [we] would have reached a different conclusion in the first instance.' " Brumfield v. Cain , --- U.S. ----, 135 S.Ct. 2269, 2277, 192 L.Ed.2d 356 (2015) (alteration in original) (citation omitted). "If [r]easonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's ... determination." Id. (alteration in original) (citations omitted).
Factual findings made by a state court are presumed correct, and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). The Supreme Court has recognized there is a question about the relationship between § 2254(d)(2)'s "unreasonable determination of the facts" standard and § 2254(e)(1)'s presumption, but it has "not yet defined the precise relationship between [them.]" Brumfield , 135 S.Ct. at 2282 (citation omitted); see also Velez v. Clarinda Corr. Facility , 791 F.3d 831, 834 n.1 (8th Cir. 2015) (noting possible conflict but recognizing previous Supreme Court language that § 2254(e)(1) applies to determination of factual issues, not decisions, and § 2254(d)(2) applies to granting of habeas relief, itself).
If a petitioner failed to develop the factual basis of a claim in state court, the federal court cannot hold an evidentiary hearing unless the petitioner shows "the claim relies on ... a new rule of constitutional law, made retroactive ...; or ... a factual predicate that could not have been previously discovered through the exercise of due diligence; and ... the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2). " Section 2254(e)(2) continues to have force where § 2254(d)(1) does not bar federal habeas relief." Cullen , 563 U.S. at 185, 131 S.Ct. 1388.
Except for certain kinds of error that require automatic reversal, even when a state petitioner's federal rights are violated, "relief is appropriate only if the prosecution cannot demonstrate harmlessness." Davis v. Ayala , --- U.S. ----, 135 S.Ct. 2187, 2197, 192 L.Ed.2d 323 (2015). "Harmlessness" in the context of § 2254 means "the federal court has 'grave doubt about whether a trial error of federal law had "substantial and injurious effect or influence in determining the jury's verdict." ' " Id. at 2197-98 (citation omitted). This standard requires "more than a 'reasonable possibility' that the error was *1005 harmful." Davis , 135 S.Ct. at 2198 (quoting Brecht v. Abrahamson , 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) ); cf. Chapman v. California , 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) (holding the standard for harmlessness on direct review from a state court to the U.S. Supreme Court is whether the error was "harmless beyond a reasonable doubt"). When a state court determines the harmlessness question, "the Brecht test subsumes the limitations imposed by AEDPA." Davis , 135 S.Ct. at 2199.
These strict limitations reflect that habeas relief is granted sparingly, reserved for "extreme malfunctions in the state criminal justice systems" and "not as a means of error correction." Greene v. Fisher , 565 U.S. 34, 38, 132 S.Ct. 38, 181 L.Ed.2d 336 (2011) (quoting Harrington , 562 U.S. at 102, 131 S.Ct. 770 ). As the Supreme Court has reminded courts, "[i]t bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.... [ Section 2254(d) ] preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther." Harrington , 562 U.S. at 102, 131 S.Ct. 770.
Within that disciplined legal framework, the Court addresses Enriquez's ineffective assistance of counsel argument.
III. DISCUSSION
To demonstrate constitutionally ineffective assistance under the Sixth Amendment to the United States Constitution, a petitioner must show (1) counsel's representation was deficient, and (2) the deficiency was prejudicial. Strickland v. Washington , 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The first prong is established when a petitioner shows counsel's performance fell below an objective standard of reasonableness. Id. at 687-88, 104 S.Ct. 2052. Prejudice is demonstrated with "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland , 466 U.S. at 694, 104 S.Ct. 2052. A court need not address both components of the test if a petitioner makes an insufficient showing on one of the prongs. Id. at 697, 104 S.Ct. 2052. When analyzing Strickland under the AEDPA standard of review, the review by the district court is "doubly deferential," Cullen , 563 U.S. at 202, 131 S.Ct. 1388, and "federal courts are to afford 'both the state court and the defense attorney the benefit of the doubt.' " Etherton , 136 S.Ct. at 1151 (citation omitted).
"Reasonableness" depends on "prevailing professional norms" at the time counsel acted, with "every effort ... made to eliminate the distorting effects of hindsight, ... to evaluate the conduct from counsel's perspective at the time." Strickland , 466 U.S. at 688-89, 104 S.Ct. 2052. The parties cite no United States Supreme Court case holding that counsel performs ineffectively by failing to assert a search and seizure claim under state law that arguably provides more protection than its federal counterpart. Moreover, the United States Supreme Court has not directly addressed the question whether counsel performs ineffectively by failing to argue for a position when there is not binding authority for it, particularly when it is unclear if counsel's decision not to raise the issue was a strategic one. See Ruth Moyer, Counsel as "Crystal Gazer": Determining the Extent to Which the Sixth Amendment Requires that Defense Attorneys Predict Changes in the Law, 26 Geo. Mason U. Civ. Rts. L.J. 183, 195 (2016) (citing *1006 Smith v. Murray , 477 U.S. 527, 535-36, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986), for the proposition that a tactical decision not to challenge precedent will not suffice to show cause and prejudice to overcome procedural default of a claim); Murray , 477 U.S. at 536, 106 S.Ct. 2661 ("It will often be the case that even the most informed counsel will fail to anticipate a state appellate court's willingness to reconsider a prior holding or will underestimate the likelihood that a federal habeas court will repudiate an established state rule. But, as Strickland v. Washington made clear, '[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.' " (alteration in original) (quoting Strickland , 466 U.S. at 689, 104 S.Ct. 2052 ) ).
The lack of Supreme Court guidance, alone, might be enough to conclude the state court ruling in Enriquez's case was not an unreasonable application of Strickland. See Cullen , 563 U.S. at 202, 131 S.Ct. 1388. But Enriquez argues the United States Supreme Court decision in Padilla v. Kentucky , 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), "stands for the proposition that the purported absence of controlling precedent does not insulate trial counsel from an ineffective assistance of counsel claim." Pet'r's Br. 9, ECF No. 34. In Padilla , the Court held that defense counsel performed deficiently by failing to inform a noncitizen client of the risk of deportation arising from a guilty plea. Id. at 368-69, 130 S.Ct. 1473. It explained what deficient representation means:
The first prong-constitutional deficiency-is necessarily linked to the practice and expectations of the legal community: "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." We long have recognized that "[p]revailing norms of practice as reflected in American Bar Association standards and the like ... are guides to determining what is reasonable ...." Although they are "only guides," and not "inexorable commands," these standards may be valuable measures of the prevailing professional norms of effective representation, especially as these standards have been adapted to deal with the intersection of modern criminal prosecutions and immigration law.
Padilla , 559 U.S. at 366-67, 130 S.Ct. 1473 (citations omitted). The Supreme Court relied on various practice guides to determine "[t]he weight of prevailing professional norms supports the view that counsel must advise her client regarding the risk of deportation." Id. at 367, 130 S.Ct. 1473. It further recognized the immigration statute regarding the consequences was "succinct, clear, and explicit." Id. at 368, 130 S.Ct. 1473. "When the law is not succinct and straightforward ..., a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences. But when the deportation consequence is truly clear, as it was in this case, the duty to give correct advice is equally clear." Id. at 369, 130 S.Ct. 1473 (footnote omitted). The Supreme Court has also said that assessing whether legal representation falls below an objective standard of reasonableness as indicated by prevailing professional norms and whether the defendant suffers resulting prejudice is a "garden-variety" application of Strickland. See Chaidez v. United States , 568 U.S. 342, 348, 133 S.Ct. 1103, 185 L.Ed.2d 149 (2013) (determining, among other things, that Padilla applied Strickland ).
Enriquez's case is in a different procedural posture than Padilla or Chaidez , where the claim was reviewed directly by the Supreme Court and not through the *1007 lens of § 2254(d). Padilla , 559 U.S. at 356, 130 S.Ct. 1473 (writ of certiorari to the Kentucky Supreme Court regarding postconviction relief); Chaidez , 568 U.S. at 342, 133 S.Ct. 1103 (appeal on petition for writ of coram nobis). Here, there is the general question whether it was reasonable for counsel not to have argued a defendant's rights were violated under the arguably more protective Iowa Constitution, and the more pointed question whether it was reasonable for counsel not to have relied on the Iowa Constitution to challenge a search based on a defendant's cohabitant's probation agreement that allowed warrantless searches. The Iowa court rested its decision on the latter, and Enriquez relies on the former. In this habeas action, this Court's analysis is removed a step further-was the state court decision on the Sixth Amendment question contrary to, or an unreasonable application of, Strickland or some other clearly established federal law, as determined by the Supreme Court?
A. Should Counsel Have Raised a Claim Under the Iowa Constitution?
In the 2016 decision on the postconviction appeal in Effler , the Iowa Court of Appeals pointed out:
It was the 2009 Iowa Supreme Court's three/three split in Effler II on further review in Effler's direct appeal of whether his request for counsel prior to confessing was ambiguous that signaled potential for a sea change in how the 2009 Court might interpret the Iowa Constitution if a claim was raised under it in such factual circumstances in the future. Effler II revealed, for the first time, an invitation by three members of the 2009 Court to criminal defense lawyers to begin raising specific arguments under the Iowa Constitution in situations where they believe criminal defendants have unequivocally requested, and are denied, counsel prior to making inculpatory statements. Effler II , 769 N.W.2d at 895-96. (Appel, J., specially concurring).
Effler v. State , No. 14-0954, 2016 WL 1705506, at *2 (Iowa Ct. App. Apr. 27, 2016) (emphasis added). In another case from 2016, the Iowa Court of Appeals cited cases as far back as 2009 and observed that "the defense bar has been implored repeatedly to assert more state constitutional claims to allow for more development in the area." Ortiz v. State , No. 16-0441, 2016 WL 6902817, at *3 (Iowa Ct. App. Nov. 23, 2016).
Decisions of the Iowa Supreme Court go back even further, tracing the history and authority of Iowa courts "in interpreting their own state constitutions in a fashion different than federal law." Ochoa , 792 N.W.2d at 264. In Ochoa , the Iowa Supreme Court relied on its 1970 decision in Cullison , "which held that a parolee did not surrender his Fourth Amendment rights by virtue of his status as a parolee." Ochoa , 792 N.W.2d at 264 (citing Cullison , 173 N.W.2d at 538-39 ). It recognized, however, "[t]his court has to date generally developed a body of independent state constitutional law in the search and seizure area slowly and cautiously." Id. at 265. The same Iowa Supreme Court justice who authored Ochoa in 2009 also warned in 2013: "In light of the availability of state constitutional claims and the complete lack of any strategic reason not to pursue them, a number of state court judicial opinions indicate the failure to bring a state constitutional claim may amount to malpractice." Baldon , 829 N.W.2d at 816 (Appel, J., concurring). And further: "In order to help remedy the situation, the Conference of Chief Justices in 2010 passed a resolution urging all law schools to offer a course in state constitutional law." Id. at 817 (Appel, J., concurring). And just last month: "there is no reason why we must imitate the federal approach in our interpretation of *1008 the open-textured state constitutional provision." State v. Wickes , No. 16-1684, 910 N.W.2d 554, 575, 577, 2018 WL 1559813, at *15, *17 (Iowa Mar. 30, 2018) (Appel, J., concurring specially, joined by Wiggins and Hecht, JJ.).
The decision in Ochoa was joined by all but one of the Iowa Supreme Court Justices.[7] Ochoa , 792 N.W.2d at 292. To be sure, there is a difference of opinion among the current Iowa Supreme Court Justices regarding the interpretation of parallel provisions of the United States Constitution and the Iowa Constitution. While decisions such as Short and Baldon held that the Iowa Constitution safeguards more than the federal Constitution, at least three of the current Iowa Supreme Court Justices have indicated they are on the other side of the issue. See Short , 851 N.W.2d at 507, 519 (Waterman, J., dissenting, joined by Mansfield, J.) ("I write separately to reemphasize my disagreement with our court's departure from well-settled Fourth Amendment precedent and to reiterate my view that State v. Baldon and State v. Ochoa are plainly erroneous for the reasons explained by Justice Mansfield in his Baldon dissent, which I joined."); id. at 509 ("[T]he majority takes an inconsistent approach to error preservation and rests its analysis on a false premise-that State v. Cullison , a parolee-search case, was decided four decades ago under the search and seizure provision in article I, section 8 of the Iowa Constitution." (footnote omitted) ); id. at 514 ("Contrary to Ochoa , I consider a United States Supreme Court decision on the Fourth Amendment to be of significantly greater precedential weight than a decision by another state supreme court. Why? Because, to restate the obvious, the United States Supreme Court's holdings are binding on all state and federal courts applying the Fourth Amendment, and our state constitution's search and seizure provision has the same meaning as the federal provision."); id. at 523, 527 (Mansfield, J., dissenting, joined by Waterman and Zager, JJ.) ("I do not understand the basis for the viewpoint that we are being 'humble' when we reject precedents from the United States Supreme Court and state supreme courts around the country and conclude, by ourselves, that a warrant is always necessary to search a home absent exigent circumstances (or maybe consent)."); Baldon , 829 N.W.2d at 837, 847 (Mansfield, J., dissenting, joined by Waterman, J.) ("I have serious concerns about an approach that treats a United States Supreme Court decision as just another dish on the menu.").
Iowa courts have been reluctant to find counsel performed deficiently by failing to challenge parole and probation agreements under the Iowa Constitution. An Iowa court did not fault counsel for choosing not to raise such a claim as late as 2012. Ortiz , 2016 WL 6902817, at *4 (finding no ineffective assistance because "it is a step too far to find, as a matter of law, that defense counsel breached a constitutional duty owed his client and failed to perform competently by not filing a motion to suppress evidence contrary to ninety years of federal law and thirty-two years of state law," and also, "counsel made a strategic decision to not challenge the drug evidence"). Perhaps trial counsel could not have been expected to raise the issue in 2008, or even in 2009, when there was only an invitation to raise the issue by three Iowa Supreme *1009 Court Justices in an equally divided opinion issued the week before trial began. The question gets closer as time goes on, after Ochoa was decided and Enriquez's appeal was awaiting decision, and the same office represented Enriquez and Ochoa on appeal, and there is no clear rationale in the record why appellate counsel did not raise the issue. Given that the defense bar has been "implored repeatedly" over the years to raise such issues, see Ortiz , 2016 WL 6902817, at *3, it is evident that competent defense lawyers now should be expected to raise claims based on the Iowa Constitution to protect their clients' privacy rights. But the standards now are not the measure of counsel's performance when Enriquez's case was on appeal in 2011. And-more to the point-this Court cannot say the Iowa courts misapplied Strickland in ruling that counsel's performance was not deficient in Enriquez's case.
It is vital to remember that even if this Court disagrees with the state court decision, and even if it would have decided the issue differently in the first place, that is not the standard of review for this habeas action. See Lockyer 538 U.S. at 76, 123 S.Ct. 1166. Instead, for Enriquez to obtain relief, this Court must conclude "[t]he state court decision must be 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.' " Etherton , 136 S.Ct. at 1151 (citation omitted). Given the unsettled status of the Iowa law regarding persons in Enriquez's position, this Court concludes that a fairminded jurist could determine that counsel for Enriquez during the trial and appeal was not to be faulted for failing to raise a challenge under the Iowa Constitution based on his cohabitant's probation agreement.
B. Was Enriquez Prejudiced?
Beyond the question of competency is the question the Iowa court did not reach-Is there a reasonable probability[8] the result would have been different if counsel had challenged the search under the Iowa Constitution? This Court must conclude there is not.
At the time Ochoa was decided, while Enriquez's appeal was pending, Enriquez's case was arguably not as strong as the search invalidated in Ochoa for the following reasons: (1) Ochoa objected to the *1010 search, and Enriquez's cohabitant apparently did not object; (2) Ochoa was a parolee, as was the defendant in Cullison , and the Iowa Supreme Court had not yet addressed the case of probationers like Ryder; (3) officers had zero suspicion to search Ochoa's space, and Ryder's probation officer had suspicions that Ryder was living in a home with drug activity and firearms; and (4) only law enforcement officers were present in Ochoa's case, whereas Ryder's probation officer was present with law enforcement officers for Ryder's search. Enriquez argues his case is actually stronger than that in Ochoa because he was a third party, not the probationer, thus officers had no reason to be searching his home. The court in Baldon raised the "concern that suspicionless consent searches of parolees also impact family and friends who live with parolees." Baldon , 829 N.W.2d at 795. This argument is, however, undercut by the fact that Ryder's probation officer suspected illegal activity at Ryder's home, and officers conducted a cursory search once inside to maintain their safety. Even if Ryder did not voluntarily consent to the search, it is at least arguable, even now, that the search might be valid under the "special-needs doctrine," see Brooks , 888 N.W.2d at 414, because the probation officer was attempting to carry out the goals of the probation agreement. Furthermore, as late as 2015, the Iowa Supreme Court refused to "address application of this [special-needs exception] standard to probationers or how the scope of the search might be affected by the expectations of privacy held by others living in the same home." King , 867 N.W.2d at 127.
For Enriquez to win, the Iowa courts would have needed to telescope about six years of decisions down into Enriquez's case, and then gone further to rule that a probationer suspected of living with guns and possible drug trafficking was not a good enough reason to do a probation check, that the probationer's consent was not valid, and that a third party could challenge the search. Even now, it is not a given that the Iowa courts would rule in a defendant's favor on the same issue. Certainly it is up to the Iowa courts to decide on their own timetable what their state laws mean. It is not the role of this federal court to predict that the Iowa courts, if they had been presented with this issue then, would have interpreted their own laws in a certain way that was not made clear until years later. If the Iowa Supreme Court believed the lower court got it wrong in Enriquez's case, that is, if it believed counsel should have raised the issue and there is a reasonable probability it would have ruled the search was invalid, the Iowa Supreme Court could have taken up the issue on further review. It did not. Maybe it will, but this is not the case to say so. Giving the Iowa Court of Appeals the deference it is due, this Court concludes the decision was not contrary to or an unreasonable application of clearly established Supreme Court precedent, and it was not "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).
IV. CERTIFICATE OF APPEALABILITY
Pursuant to Rule 11(a) of the Rules Governing Section 2254 Proceedings in the United States Courts, the court must issue or deny a certificate of appealability when it enters a final order adverse to the Petitioner. District Courts have the authority to issue certificates of appealability under 28 U.S.C. § 2253(c) and Fed. R. App. P. 22(b). "A certificate of appealability may issue under [this section] only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Such a showing means "petitioner must demonstrate that *1011 reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel , 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). The Court concludes Enriquez has made a substantial showing of the denial of a constitutional right, therefore the Court grants a certificate of appealability on the ineffective assistance of counsel claim.
V. SUMMARY
The Court has carefully reviewed the submitted record of the state trial court proceedings, as well as the briefs and filings of the parties in this habeas action. Having done so, the Court concludes that the Iowa courts did not render a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, and the Iowa courts did not make a decision based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. See 28 U.S.C. § 2254(d). The petition is therefore denied , and the case is dismissed.
The Court grants a certificate of appealability on the ineffective assistance of counsel argument.
The Court appreciates the diligent assistance of court-appointed counsel.
IT IS SO ORDERED .

Because Enriquez is on parole from an unexpired sentence, his petition is not moot. See Maleng v. Cook , 490 U.S. 488, 491, 109 S.Ct. 1923, 104 L.Ed.2d 540 (1989) (citing Jones v. Cunningham , 371 U.S. 236, 242, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963) ).

Enriquez raised other claims in his original petition, but counsel has not briefed them, therefore the Court deems them waived. See Harper v. Nix , 867 F.2d 455, 457 (8th Cir. 1989).

For ease of reference, the Court refers to the various state court documents submitted to this Court by their Electronic Case Files (ECF) number.

Ryder was on probation for second-degree theft and forgery. ECF No. 31-1 at 49. Ryder's probation officer testified he was concerned about reports of possible drug trafficking and firearms in Ryder's home because "[p]art of our department mission statement is public safety, and that was the major concern for me." ECF No. 31-5 at 19. The probation officer went with three other law enforcement officers to the home. Law enforcement officers conducted the search and seizure while Ryder's probation officer talked with her. ECF No. 31-1 at 52-53; ECF No. 31-5 at 25.

Ryder's probation officer interpreted her probation agreement to allow her person, property, residence, and personal effects to be searched at any time by the probation officer or law enforcement officers. ECF No. 31-2 at 2-3. When asked if the officers entered the house based on the probation agreement and not necessarily based on Ryder's consent, the probation officer answered, "She had said to come on in, and she was going to talk to Rosendo." ECF No. 31-5 at 24.

This page of the transcript is not included in the record, but the parties do not dispute the quote.

When Ochoa was issued on December 17, 2010, the Iowa Supreme Court was comprised of Chief Justice Ternus, and Justices Cady, Streit, Wiggins, Hecht, Appel, and Baker. Chief Justice Ternus, and Justices Streit, and Baker were removed from the Iowa Supreme Court at the end of 2010. Justices Mansfield, Waterman, and Zager were appointed in 2011.

The Iowa Court of Appeals stated Enriquez "must prove by a preponderance of the evidence (1) the attorney failed to perform an essential duty and (2) prejudice resulted from the failure." Enriquez , 2015 WL 4935609, at *2. The Iowa Court of Appeals relied on Iowa precedent and did not cite Strickland. Similar language in another Iowa case has been determined to be contrary to the "reasonable probability" standard in Strickland. See Paulson v. Newton Corr. Facility, Warden , No. 4:09-cv-00493-JEG, 2013 WL 12138596, at *4 (S.D. Iowa Oct. 18, 2013), aff'd , 773 F.3d 901 (8th Cir. 2014), cert. denied , --- U.S. ----, 136 S.Ct. 42, 193 L.Ed.2d 52 (2015) ; see also Paulson v. Newton Corr. Facility , 703 F.3d 416, 420 (8th Cir. 2013) (criticizing Iowa court statement that "[i]n order to prevail on a claim counsel was ineffective, the applicant must prove, by a preponderance of the evidence, both that counsel failed to perform an essential duty and that the applicant was prejudiced," among other statements, and remanding for consideration whether the Iowa court applied the wrong standard).
The postconviction trial court in Enriquez's case set out a similar statement of the standard, though unlike the Iowa Court of Appeals, it did cite Strickland. ECF No. 31-15 at 9. It also cited State v. Madsen , 813 N.W.2d 714, 724 (Iowa 2012). After citing Strickland , however, the postconviction trial court focused only on whether counsel should have been "clairvoyant as to what cases were on appeal, the arguments made, or what the appellate or supreme court would decide once presented." ECF No. 31-15 at 8-9.
Because it does not appear either court in Enriquez's case reached the Strickland prejudice prong, this Court does not address the impact of Paulson on Enriquez's case.